**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4613-14T2

SHABSI GANZWEIG,

    Plaintiff-Respondent,

v.

TOWNSHIP OF LAKEWOOD, MARY
ANN DEL MASTRO in her official
capacity as Records Custodian
and Township Clerk of the Township
of Lakewood, OFFICE OF
THE PROSECUTOR OF THE COUNTY
OF OCEAN, and MARC E. ROESSLER in his
official capacity as Assistant Prosecutor
of the County of Ocean,

    Defendants-Appellants.

_____

        Argued on November 1, 2016 — Decided August 28, 2017

        Before Judges Reisner, Koblitz and Sumners
        (Judge Reisner concurring in part, dissenting
        in part).

        On appeal from Superior Court of New Jersey,
        Law Division, Ocean County, Docket No. L-1292-
        14.

        William Kyle Meighan, Assistant Prosecutor,
        argued the cause for appellant Ocean County
        Prosecutor's Office (Joseph D. Coronato, Ocean
        County Prosecutor, attorney; Samuel
        Marzarella, Supervising Assistant Prosecutor,

of counsel and on the brief; Mr. Meighan, on the brief).

Bathgate, Wegener & Wolf, PC, attorneys for appellants Township of Lakewood and Mary Ann Del Mastro, join in the brief of appellant Ocean County Prosecutor's Office.

Walter M. Luers argued the cause for respondent.

Annmarie Cozzi, Senior Assistant Prosecutor, argued the cause for amicus curiae County Prosecutors Association of New Jersey (Sean F. Dalton, President, County Prosecutors Association, attorney; Ms. Cozzi, of counsel and on the brief).

Ian C. Kennedy, Deputy Attorney General, argued the cause for amicus curiae Attorney General (Christopher S. Porrino, Attorney General, attorney; Mr. Kennedy, of counsel and on the brief).

PER CURIAM

The Ocean County Prosecutor's Office, the Township of Lakewood, and others appeal from an October 24, 2014 order finding they violated the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, when they denied a Lakewood resident access to records relating to a traffic stop. They also appeal a March 24, 2015 grant of approximately $22,000 in counsel fees and costs.[1] The parties asked us to delay this opinion with the hope that our

_____

[1] We granted amicus curiae status to the County Prosecutors Association of New Jersey and the Attorney General.

Supreme Court would resolve the issues raised by way of its recently issued opinion North Jersey Media Group, Inc. v. Township of Lyndhurst, ___ N.J. ___ (2017). The parties now agree that the Court left open the accessibility of dash-cam videos containing an audio track recorded under a local police directive, which it will likely determine when deciding Paff v. Ocean County Prosecutor's Office, 446 N.J. Super. 163, 183 (App. Div.), certif. granted, 228 N.J. 403 (2016). See N. Jersey Media, supra, slip op. at 28-31.

Because we agree with the majority opinion in Paff, supra, 446 N.J. Super. at 193, we affirm the access to the videos.[2] To provide a more complete record should further review be necessary, we remand for consideration of the common law right of access to the dash-cam videos. Because the Ocean County Prosecutor's Office issued a press release disclosing some information regarding the investigation, we also remand to the trial court to determine whether the written reports requested need to be supplied. N. Jersey Media, supra, slip op. at 36. We further remand the counsel fee award for the court to review whether time spent obtaining the written records alone is appropriate. Any time spent exclusively

---

[2] For the reasons expressed in Paff, we will not consider the applicability of the executive order exemption, an issue raised by defendants for the first time on appeal. Paff, supra, 446 N.J. Super. at 190-91.

to obtain records that the trial court determines need not have been supplied should be subtracted from the total time and the fee award adjusted. We thus affirm in part and remand in part.

We derive the following facts from the material supplied by the parties. On August 31, 2013, a Lakewood Township Police Officer stopped a driver for an illegal left turn, N.J.S.A. 39:4-123. The driver and passenger provided their names. The officer permitted the vehicle to leave without issuing a summons, but less than a minute later, the officer grew suspicious that the occupants of the car had given him fictitious names, and stopped the car again.

The officer searched the car after the second stop and discovered a controlled dangerous substance (CDS). This second search was recorded by a dash-cam on another Lakewood police car that responded to the scene, as well as one located on the car of the officer under investigation. The officer issued the driver motor vehicle summonses for possession of CDS by a driver, N.J.S.A. 39:4-49.1 and making an illegal left turn. Both the driver and passenger were charged with the crimes of use or possession with intent to use CDS, N.J.S.A. 2C:36-2, possession or distribution of a hypodermic syringe or needle, N.J.S.A. 2C:36-6, hindering apprehension, N.J.S.A. 2C:29-3, and possession of CDS, N.J.S.A.

2C:35-10(a)(1). They were indicted for hindering apprehension, N.J.S.A. 2C:29-3, and possession of CDS, N.J.S.A. 2C:35-10(a)(1).

After the charges were formalized in an indictment, credible information surfaced that the officer illegally searched the car and falsified documents to conceal the wrongdoing. In light of this information, the Ocean County Prosecutor's Office dismissed the indictment against the driver and passenger and charged the police officer with official misconduct. A member of the Prosecutor's Office certified that the "investigation into the actions of [the officer] is still pending."

Pursuant to OPRA, plaintiff Shabsi Ganzweig, a resident of Lakewood, sought "copies of the audio and video and all communications to dispatch and the Watch Commander" as well as "all reports in connection with" the August 31, 2013 traffic stop.

Plaintiff's request to the township clerk of Lakewood was forwarded to an assistant prosecutor who denied the OPRA request. The assistant prosecutor stated the requested records were "criminal investigatory records under OPRA, which 'means a record which is not required by law to be made, maintained or kept on file that is held by a law enforcement agency which pertains to any criminal investigation or related civil enforcement proceeding.' N.J.S.A. 47:1A-1.1." (Emphasis added). Because the "requested documents 'pertain' to the pending criminal case

against" the officer, and because the statute included an exception for information pertaining to "ongoing investigation[s]" if "inimical to the public interest," N.J.S.A. 47:1A-3(a),[3] the assistant prosecutor claimed the office was not required to release the requested recordings and reports. He also stated "the requested records form the basis of an internal affairs investigation" and such records, according to the "Attorney General's Internal Affairs Policy & Procedures," are considered "confidential." The assistant prosecutor also refused disclosure based on the "common law right of access," claiming plaintiff

---

[3] N.J.S.A. 47:1A-3 has two parts. "[S]ection 3(a) exempts from disclosure records that 'pertain to an investigation in progress by any public agency' if their examination 'shall be inimical to the public interest.'" N. Jersey Media, supra, slip op. at 19 (quoting N.J.S.A. 47:1A-3(a)). Section 3(b) provides categories of "information concerning a criminal investigation" that "shall be available to the public within 24 hours or as soon as practicable, of a request." N.J.S.A. 47:1A-3(b). Among the required disclosures, the statute mandates the release of "information as to the identity of the investigating and arresting personnel and agency" and "information of the circumstances immediately surrounding the arrest, including but not limited to the time and place of the arrest, resistance, if any, pursuit, possession and nature and use of weapons and ammunition by the suspect and by the police." N.J.S.A. 47:1A-3(b). A public agency may, however, withhold information otherwise required under section 3(b) when "it shall appear that the information requested or to be examined will jeopardize the safety of any person or jeopardize any investigation in progress or may be otherwise inappropriate to release." Ibid. "This exception shall be narrowly construed to prevent disclosure of information that would be harmful to a bona fide law enforcement purpose or the public safety." Ibid.

lacked the "personal or particular interest in the material sought" required under the common law.

After plaintiff filed a complaint and order to show cause alleging a violation of OPRA and the common law right of access, defendants furnished a Vaughn index: a detailed affidavit listing the withheld records with the claimed exemptions. See Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973) cert. denied, 415 U.S. 977, 94 S. Ct. 1564, 39 L. Ed. 2d 873 (1974).

The same judge who decided the OPRA request in Paff issued a written opinion finding a violation of OPRA and directing the release of the police reports, as well as the police dash-cam recordings of the two traffic stops. The judge did not reach the issue of access to the records under the common law. He issued a separate written opinion awarding plaintiff $21,401.10 in attorney fees and $398.46 in costs. The parties consented to a stay pending appeal.

"The purpose of OPRA 'is to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 379 (App. Div. 2009) (quoting Times of Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp., 183 N.J. 519, 535 (2005)).

In North Jersey Media, the Chief Justice set forth the statutory framework of OPRA, which we need not repeat here. N. Jersey Media, supra, slip op. at 10-13. We review de novo a trial judge's legal conclusions concerning access to public records under both OPRA and the common law. Drinker Biddle & Reath, LLP v. N.J. Dep't of Law and Pub. Safety, 421 N.J. Super. 489, 497 (App. Div. 2011). The two issues presented here are 1) whether the recordings constitute an official record legally required by law to be maintained, based on Lakewood police directives requiring the dash-cam filming of all traffic stops and 2) whether the reports should be provided, either pursuant to OPRA, N.J.S.A. 47:1A-3(b), or the common law right of access.

## I. ACCESSIBILITY OF RECORDS

In supplemental briefing supplied after the North Jersey Media decision, defendants urge us to side with the dissent in Paff with regard to whether the dash-cam videos are required by law to be maintained. See Paff, supra, 446 N.J. Super. at 199 (Gilson, J., dissenting). We instead agree with the majority for the reasons expressed so convincingly by Judge Kennedy. Id. at 185-87. The dash-cam recordings were required to be made by a local police directive and thus do not fit the definition of "criminal investigatory records," which need not be released.

Even if not criminal investigatory records, however, the prosecutor need not release the recordings pursuant to OPRA if they both pertain to an ongoing investigation and it would be inimical to the public interest to release them. The recordings do pertain to an ongoing investigation, but defendants have not provided specific reasons to classify the release of the records as "inimical to the public interest" under section 3(a). "[I]ssues about officer safety, the reliability of ongoing investigations, and transparency are pertinent to this inquiry." N. Jersey Media, supra, slip op. at 41. The prosecutor must give "particularized reasons." Ibid. Such a showing is absent here, where the prosecutor provides generalities only.

Thus, we affirm the release of the recordings under OPRA. As an alternative route to affirmance, plaintiff urges us to remand for the trial court to determine whether, similar to the dash-cam videos in North Jersey, the recordings should be accessible through the common law. Public records are accessible through the common law upon the following showing: "(1) the person seeking access must establish an interest in the subject matter of the material; and (2) the citizen's right to access must be balanced against the State's interest in preventing disclosure." Id. at 45 (quoting Mason v. City of Hoboken, 196 N.J. 51, 67-68 (2008)).

In North Jersey Media, the Court found the common law criteria had been met where the media sought dash-cam videos of an officer shooting a civilian. Id. at 48. Defendants correctly distinguish North Jersey Media by pointing out that no death or use of force was involved here and plaintiff is a private citizen rather than the media. Nonetheless, it could well be argued that the public's legitimate interest in how its police officers conduct themselves constitutes a "particular interest" in the information, well beyond that of idle curiosity, requiring disclosure under the common law. Rather than militate towards secrecy, "the public interest" in an investigation into police malfeasance may well support disclosure. That an internal affairs investigation is ongoing is not necessarily grounds to deny access when the incident is already public and resulted in the dismissal of a criminal indictment against two individuals. The trial court on remand should consider and rule on this common law argument to create a full record in the event our Supreme Court adopts the position of the dissent in Paff, holding that the police directive to activate the dash-cam on every traffic stop does not mean the records were required to be kept by law. See Paff, supra, 446 N.J. Super. at 199 (Gilson, J., dissenting).

## II. PRESS RELEASE

North Jersey Media allows the State to reveal information from an ongoing criminal investigation, not required by law to be kept, but required to be revealed pursuant to N.J.S.A. 47:1A-3(b), through a press release rather than release of the actual police reports. N. Jersey Media, supra, slip op. at 36. Plaintiff argues that defendants "never released any information about the motor vehicle stops and the persons arrested in connection with those stops," and thus did not fully comply with section 3(b). The Ocean County Prosecutor's Office published a press release that stated the officer's arrest was "the result of an investigation . . . in connection with the search of a motor vehicle in August 2013 which resulted in the seizure of illegal controlled dangerous substances." The press release did not provide details of the stop or the names of the driver or passenger in the stopped car. We remand the matter to the trial court to determine whether this press release met the requirement of section 3(b) by including all information required to be provided. We also of necessity remand for a review of counsel fees with that question in mind. If some counsel fees accrued solely to pursue police records not required to be released, that portion of the counsel fees should be deducted from the total fee awarded.

Affirmed in part and remanded in part for a review of the release of police reports and counsel fees in conformity with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

**REISNER, P.J.A.D., concurring in part and dissenting in part.**

For the reasons set forth below, I concur in part and dissent in part from the majority opinion.

As the Supreme Court recently made clear, the dash-cam video at issue here was a "criminal investigatory record" within the meaning of N.J.S.A. 47:1A-1.1. N. Jersey Media Group, Inc. v. Twp. of Lyndhurst, __ N.J. __, __ (2017) (slip op. at 19). The dash-cam was activated when the officer decided to stop the suspect's car a second time, due to a belief that the car might contain drugs. Hence, the video "pertained to an investigation into actual or potential violations of criminal law." Ibid. Therefore, unless the video was "required by law to be made, maintained or kept on file," N.J.S.A. 47:1A-1.1, it was protected from disclosure under OPRA from the moment it was created.

Because I agree with Judge Gilson's dissent in Paff v. Ocean County Prosecutor's Office, 446 N.J. Super. 163, 194-203 (App. Div.) (Gilson, J., dissenting) certif. granted, 228 N.J. 403 (2016), I cannot join in the majority opinion here. I find Judge Gilson's opinion persuasive for the reasons he cogently stated, including the following:

> The majority's conclusion that the word "law" deserves a broad reading rests on the directive in N.J.S.A. 47:1A-1 to construe the provisions of OPRA "in favor of the

public's right of access." That provision, however, was not meant to eliminate the exemptions to OPRA. To hold that an order issued by a municipal chief of police makes a document required by law, would, by logical extension, effectively eliminate the criminal investigatory records exemption. Applying the majority's reasoning, any time there is a written directive calling for a document to be created in a police department that document would be required by law to be made and, thus, would not come within the ambit of "criminal investigatory records." It is hard to imagine that there are any criminal investigatory documents created in a police department for which there is not an order, directive or instruction calling for that document to be prepared. For example, if a police department issued instructions that officers were to prepare reports concerning all criminal investigations, under the reasoning used by the majority any and all such reports would be subject to disclosure under OPRA.

[Id. at 199.]

I concur in the majority's decision to remand this case to the trial court for further consideration of plaintiff's common law claims, as well as the issues concerning the press release and the counsel fee award. Because release of these records implicates state-wide concerns, and for the sake of completeness, I would also permit the Prosecutor's Office to raise, on remand, the argument it sought to raise for the first time on this appeal, concerning the applicability of the executive order exemption. See N.J.S.A. 47:1A-1; N.J.S.A. 47:1A-9(a).

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

2

A-4613-14T2